IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JARED HARMER,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, in her capacity as Acting Commissioner of the Social Security Administration,<br><br>　　　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:14-cv-408<br><br>Judge Clark Waddoups<br><br>Magistrate Judge Evelyn J. Furse |

## **INTRODUCTION**

Plaintiff Jared Harmer filed a Complaint against the Social Security Administration ("SSA") following the SSA's denial of his application for disability benefits and supplemental security income. The court remanded the case after concluding the SSA applied improper methodologies when making its disability determination. The court further ordered the SSA to pay attorney fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).[1]

---

[1] The court's order appears to have premature because the EAJA "prescribes the timing and content of applications seeking fees." *Scarborough v. Principi*, 541 U.S. 401, 405 (2004) (citation omitted)). The Act specifies "the time for filing the application" is "'within thirty days of final judgment in the action.'" *Id.* (quoting 28 U.S.C. § 2412(d)(1)(B)). Any error, however, has been corrected because Mr. Harmer subsequently filed a Motion for Attorney Fees that addressed each of the requirements a prevailing party must meet to obtain an attorney fee award. Moreover, the Commissioner has had a full opportunity to respond to that motion, and the court has considered all of the arguments made by the parties in reaching this Memorandum Decision and Order.

Plaintiff then filed a Motion for Attorney Fees. Subject to the modifications stated herein, the court grants the motion.

## BACKGROUND

Plaintiff Jared Harmer filed a Complaint against the Social Security Administration (SSA") on the basis that it improperly denied his application for disability benefits and supplemental security income. Magistrate Judge Evelyn J. Furse reviewed the Administrative Record and found the Administrative Law Judge ("ALJ") failed to consider all of the opinions of Mr. Harmer's treating physicians, and further failed to disclose the weight afforded to those opinions. Report & Recommendation, at 12-13 (ECF No. 38).

Judge Furse also found the ALJ applied an improper methodology when determining Mr. Harmer's ability to work. Rather than weighing "the evidence received and the medical opinions and then" determining Mr. Harmer's residual functional capacity ("RFC"), the ALJ determined Mr. Harmer's RFC and then rejected nonconforming evidence. *Id.* at 12, 15.

Judge Furse found the ALJ's determination about Mr. Harmer's credibility suffered from similar flaws. The ALJ based credibility on whether Mr. Harmer's testimony conformed to the ALJ's determination of his RFC and then used boilerplate language that precluded a meaningful review of how the ALJ's decision was reached. *Id.* at 16–17. Based on these errors, Judge Furse recommended that Mr. Harmer's case be remanded to the SSA because one could not determine whether the SSA had substantial evidence to deny Mr. Harmer benefits.

Notably, Judge Furse further recommended that the SSA be required to consider the examination conducted by Antonietta Russo, Ph.D. and the conclusions she reached about Mr. Harmer's learning disabilities and functioning. She noted the Appeals Council expressly made

Dr. Russo's examination a part of the record. *Id.* at 19. Dr. Russo concluded that Mr. Harmer's limitations precluded "performance for 15% or more of an 8-hour work day" in some categories and that one could expect him to be absent more than three days a month. Russo Med. Source Statement, Admin. R. at 763, 765 (ECF No. 8-17). Dr. Russo based her conclusions on testing and interviews conducted over multiple days, and on the fact that the testing showed Mr. Harmer was not malingering. *Id.* at 761–62. These findings were material to determining whether Mr. Harmer is disabled.

Viewing the totality of errors, Judge Furse also concluded the Commissioner's position was not "substantially justified given the patent failings of the ALJ's opinion." *Id.* at 2. She therefore recommended that the court "award reasonable attorney's fees and order Mr. Harmer to submit evidence on the amount of the fees." *Id.* at 20.

On August 17, 2017, the SSA filed a timely Objection to Judge Furse's recommendation. Following a *de novo* review of the record, the court adopted Judge Furse's recommendation in its entirety and issued an Order on February 8, 2018 that remanded the case to the SSA (ECF No. 42). In keeping with 28 U.S.C. § 2412(d)(1)(B), Mr. Harmer then filed a Motion for EAJA Attorney's Fees within thirty days of the court's final judgment (ECF No. 43). He asserted such fees are appropriate because the SSA's position was not substantially justified. On May 17, 2018, Mr. Harmer filed a Supplemental Motion (ECF No. 50), which noted that Mr. Harmer was found to be disabled when the case was remanded. Mr. Harmer's Motion for Attorney Fees is now before the court.

## ANALYSIS

I.   **SUBSTANTIAL JUSTIFICATION REVIEW**

When a plaintiff prevails in "any civil action (other than cases sounding in tort)" against the United States, the plaintiff is entitled to attorney fees "unless the court finds [1] that the position of the United States was substantially justified or [2] that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007). The Commissioner contends the present motions for attorney fees should be denied because the decision to deny Mr. Harmer benefits was substantially justified.

"The burden of establishing 'that the position of the United States was substantially justified' . . . must be shouldered by the Government." *Scarborough v. Principi*, 541 U.S 401, 414 (2004) (quoting 28 U.S.C. § 2412(d)(1)(A)) (other citations omitted). The statutory exceptions demonstrate, however, that "Congress did not . . . want the 'substantially justified' standard to be read to raise a presumption that the Government position was not substantially justified simply because it lost the case." *Id.* at 415 (quotations and citations omitted). In the Tenth Circuit, "[t]he test for substantial justification . . . is one of reasonableness in law and fact." *Hackett*, 475 F.3d at 1172 (quotations and citation omitted). This means "the government's position must be 'justified to a degree that could satisfy a reasonable person.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

The Tenth Circuit has noted the "government's position" not only means the position it takes during litigation, but also "'the action or failure to act by the agency upon which the civil action is based.'" *Id.* (quoting 28 U.S.C. § 2412(d)(2)(D)). Thus, even if the government acts reasonably during litigation, that does not mean it cures an agency's pre-litigation actions that

4

were not substantially justified. *Id.* at 1174 (discussing legal sources supporting litigation actions cannot cure pre-litigation actions, but noting it was not holding that a "government can never 'cure' unreasonable agency action"). Accordingly, the Tenth Circuit has held "that EAJA fees generally should be awarded where the government's underlying action was unreasonable even if the government advanced a reasonable litigation position." *Id.* (quotations and citation omitted).

Mr. Harmer contends "[t]he Commissioner's position in the underlying agency action and in this litigation was not substantially justified." Mot. for Atty Fees, at 2 (ECF No. 43). The Commissioner's opposition memorandum largely contends EAJA fees should not be awarded because the "agency reasonably argued" its position during litigation. *See generally* Response to Plaintiff's Mot. for Atty Fees (ECF No. 47). To the extent the Commissioner is inviting the court to deny attorney fees based on her position during litigation, the court declines to do so.

Turning now to the agency's pre-litigation actions, the ALJ first determined Mr. Harmer's residual functional capacity and then rejected medical information and testimony contrary to that determination. This was an incorrect application of procedure and legal analysis. The Commissioner contends the error was harmless because the ALJ incorporated *most* of the limitations identified by Mr. Harmer's physician.

Incorporating "most" limitations, without proper analysis about why other limitations were left out, is not harmless error in this case. Hypotheticals posed to vocational experts depend upon careful identification of a person's impairments. Here, it is the limitations that were left out that made the difference between whether Mr. Harmer was or was not disabled. The ALJ came to a conclusion, and then vetted the evidence to fit that conclusion. He did not

discuss the weight he gave to physician opinions. And, he looked at Mr. Harmer's two main limitations (hypoxic brain injury and back injury) in isolation rather than together. He drew the conclusion that because Mr. Harmer had been able to work previously despite his learning disorders from a hypoxic brain injury, such learning disorders must not preclude work. Yet, he failed to look at the combined effect Mr. Harmer's back injury and pain had on his mental functioning.

Moreover, when Mr. Harmer asked for the ALJ to develop the record further, the ALJ did not do so. Mr. Harmer then spent time and resources to develop the record himself. He went through comprehensive neurological testing that disclosed he had significant personality and cognitive difficulties arising from his "early hypoxic brain injury." Russo Med. Source Statement, Admin. R. at 761 (ECF No. 8-17). The report noted multiple areas of deficit and the complicating factor that chronic pain had on functioning, including "significant psychosocial dysfunction." *Id.* at AR 761, 763, 765.

Based on a multi-day assessment that occurred over many hours, Dr. Russo concluded Mr. Harmer was likely to be absent from work more than three days a month due to his condition and functioning. *Id.* That limitation, alone, typically precludes all work. *See Jones v. Sullivan*, 804 F. Supp. 1398, 1407 (D. Kan. 1992) (stating a "vocational expert testified that three to four days of absenteeism per month would be unacceptable to nearly all employers"). Dr. Russo further noted that the tests showed Mr. Harmer was not malingering, which called into question the ALJ's conclusion that Mr. Harmer was not credible when he reported the degree of his limitations. Even though this evidence was presented to the agency and incorporated into the

record, *see* Notice of Appeals Council Action, Admin. R. at 1, 4 (ECF No. 8-2), the Appeals Council declined to reconsider the ALJ's decision.

Viewing the totality of errors that were made, the court concludes the Commissioner's position was not substantially justified. It therefore awards attorney fees. The court must now determine the appropriate amount of attorney fees to award.

## II. ATTORNEY FEE AWARD AND OTHER COSTS

### A. Attorney Fees

The district court has "discretion to determine the amount of a fee award," but the amount must be reasonable. *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990) (citation omitted); 28 U.S.C. § 2412(d)(2)(A). Mr. Harmer's initially requested an attorney fee award of $13,841.00.[2] The motion, however, reported inconsistent attorney time ranging from 30.60 hours to 34.80 hours. The motion also used inconsistent attorney rates ranging from $237.07 per hour to $350.00 per hour. It further calculated the total paralegal fees incorrectly by stating 17.4 hours at the rate of $75.00 per hour totals $1,661.00 rather than $1,305.00. Thus, the reported hours and rates do not support an award of $13,841.00.

The Commissioner contends Mr. Harmer should be claiming no more than $6,749.83 for time spent by his attorney on this case. The Commissioner bases her calculation on the 34.80 hours that are reported on the time sheets as opposed to the hours listed in Mr. Harmer's motion. With respect to the rate, the Commissioner derives her figure from the $125 hourly rate set forth

---

[2] This amount consists of $12,180.00 in attorney fees and $1661.00 in paralegal time. Timesheets, at 8, 14 (ECF No. 43-1);

in statute, 28 U.S.C. § 2412(d)(2)(A), adjusted yearly by the Consumer Price Index. This results in a different hourly rate for each year this case was litigated from 2014 through 2018 as follows.

> 2014   $189.78 x 1.70 hours = $322.63
>
> 2015   $190.89 x 0.20 hours = $38.18
>
> 2016   $193.67 x 28.70 hours = $5,558.33
>
> 2017   $197.62 x 3.90 hours = $770.72
>
> 2018   $199.90 x 0.30 hours = $59.97

Commissioner's Response to Mot. for Atty Fees, at 11-12 (ECF No. 47). Mr. Harmer does not dispute that the adjusted hourly rates are appropriate, and the court finds they are reasonable.

The Commissioner next contends the $6,749.83 figure should be further reduced for several reasons. First, in June 2016, 0.40 hours were spent by counsel and 0.40 hours were spent by a paralegal responding to an Order to Show Cause. The Commissioner contends such hours should not be compensable in this case. The court agrees. The attorney rate in 2016 was $193.67. Multiplying that rate by 0.40 hours results in a $77.47 reduction in counsel fees. The paralegal fee remained constant for all years at $75.00. Multiplying $75.00 by 0.40 hours results in a $30.00 reduction in paralegal fees.

The Commissioner also contends a significant amount of time should be deducted because counsel used block billing, which prevents adequate review. The court disagrees that the time entries constitute improper block billing. Certainly, Mr. Lambert combined the time he spent drafting and editing, but such functions are often billed together, and the overall time was not unreasonable.

The Commissioner further contends 1.0 hour of paralegal time should be deducted because certain time billed in October 2017 appears to be for an unrelated matter. Mr. Harmer concedes that reduction is appropriate, which results in an additional $75.00 reduction.

Finally, the Commissioner contends all attorney and paralegal time spent drafting the Motion for Attorney Fees (totaling 1.7 hours) should be eliminated because the Motion has multiple errors in it. While it is true there were errors in the motion, such errors do not justify discounting the time spent on the motion, especially given the reasonable amount of time that was billed.

Based on the above, the court reduces the total paralegal hours from 17.4 down to 16 hours. Multiplying 16 hours at $75.00 an hour results in a paralegal award of $1,200. With respect to counsel's fees, the court subtracts 0.40 hours of attorney time at the hourly rate of $193.67, which equates $77.47. Subtracting $77.47 from $6,749.83 results in an award of $6,672.36. The combined award for attorney and paralegal fees is $7,872.36.

**B.     Other Costs**

In addition to attorney fees, Mr. Harmer requests $416 in other costs. Bill of Costs, at 1 (ECF No. 43-1 at 15). The government does not dispute the award of costs. Response to Plaintiff's Mot. for Atty Fees, at 2 n.1 (ECF No. 47). The court has reviewed the costs and concludes the costs appear reasonable. It therefore awards $416 in costs.

## **CONCLUSION**

For the reasons stated above, the court concludes the agency's pre-litigation actions were not substantially justified. Accordingly, the court GRANTS Mr. Harmer's Motion for Attorney Fees (ECF Nos. 43, 50) and ORDERS the Commissioner to pay $7,872.36 for time spent by Mr.

Harmer's counsel (Loren Lambert) and a paralegal on this matter. The court further ORDERS the Commissioner to pay $416 in costs, for a total award of $8,288.36. The award shall be made payable to Mr. Harmer, but it shall be sent directly to Loren Lambert. Pursuant to *Astrue v. Ratliff*, 560 U.S. 586 (2010), the payment to Mr. Harmer shall be subject to offset in accordance with 31 U.S.C. § 3716 (2014).

DATED this 7th day of February, 2019.

BY THE COURT:

_____
Clark Waddoups
United States District Court Judge